UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHEILA W.,[1]

                                 Plaintiff

-vs-

COMMISSIONER OF SOCIAL
SECURITY,

                                 Defendant.

DECISION AND ORDER

1:20-CV-01636 CJS

_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Supplemental Security Income ("SSI") benefits.   Now before the Court is Plaintiff's motion (ECF No.10) for judgment on the pleadings and Defendant's cross-motion (ECF No. 11) for the same relief.   For the reasons discussed below, Plaintiff's application is denied, and Defendant's application is granted.

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

---

[1]  The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[2] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

---

[2] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action.   The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

4

In the administrative proceedings before the Commissioner, Plaintiff, in her mid-forties with a very limited work history,[3] claimed to have become disabled as of January 1, 2018, though she stopped working on August 12, 2017. (Tr. 157).   On February 16, 2018, Plaintiff filed an application for SSI benefits listing three disabling physical conditions: "diabetes," "kidney failing" and "high blood pressure." (Tr. 157).  Plaintiff indicated that she had also previously received medical treatment for "nerves in hand left shoulder rotor cuff arthritis." (Tr. 161).

On March 1, 2018, Plaintiff, who is right handed, completed an Adult Function Report (Tr. 167-176) indicating that her physical limitations were primarily due to pain in her left hand and arm: "Rotator cuff in left arm has limited mobility, fingers + arm goes numb + sometimes cramping occurs." (Tr.170); "limited use of left hand cramps + hold onto things." (Tr. 171); "What activities bring on pain?   Consistent use of left hand or raising arm to a high degree.")    Plaintiff asserted that the condition caused her pain and cramping in her left hand. (Tr. 171).    Plaintiff also indicated that she had problems sitting for long periods, and needed to adjust her sitting position frequently, apparently due to pain radiating into her legs from her shoulder. (Tr. 171) ("Sitting:   constantly switching from left to right side."); (Tr. 175) ("Should blade, neck area . . . Radiates from neck down arm to side + legs.").

---

[3] See, Tr. 158 (work history); see also, Pl. Memorandum of Law, ECF No. 10-1 at p. 7 ("She does not recall ever working a full-time job for an extended period of time."). Plaintiff has four children, three of whom are adopted, and Plaintiff was supported financially by an "adoption subsidy." Tr. 37-38.   Plaintiff refers to providing "foster care" as her only period of extended employment. Tr. 43.

Plaintiff stated that she was somewhat limited in her daily activities, and, as an example, indicated that she was no longer able to "prepare full course meals," but could still prepare smaller meals, sandwiches and salads. (Tr. 169) ("Used to be able to prepare full course meals.   Now limited to making a meat + vegetable.").   Plaintiff indicated, though, that she was able to perform all of her personal daily care needs; get her children ready for school, including bathing and dressing her six-year-old son; feed her children and get them ready for bed; make her bed; vacuum; perform "light housekeeping"; go outside by herself three days per week; drive a car; go shopping twice per month for a total of three hours; go to dinner with her fiancé twice per month; go to church twice per month; and drive her children to weekly appointments. (Tr. 167-176).   Plaintiff stated that an adult son lived with her, who performed some household chores, such as laundry and occasional cooking, when he was not working. (Tr. 168).

On April 5, 2018, Hongbiao Liu, M.D. ("Liu") performed a consultative internal medicine examination at the Commissioner's request. (Tr. 218-221).   Plaintiff's reported statements to Liu were somewhat different than what she stated in the Adult Function Report one month earlier.   For example, when asked about her "chief complaint," Plaintiff reportedly told Liu that it was a "history of arthritis," that caused her "constant pressure, sharp," that was "associated with numbness and tingling in bilateral hands and toes occasionally." (Tr. 218) (emphasis added).   Plaintiff also reportedly told Liu that her hypertension was "currently stable" and that she had "no complications" related to her diabetes. (Tr. 218).   Liu reported that Plaintiff's daily activities involved "[t]aking shower, bathing, and dressing occasionally.   The claimant like watching tv, and listening to the

6

radio, reading books, and socializing with friends." (Tr. 219).   Oddly, Plaintiff evidently said nothing to Liu about her children or the activities she performed to care for them.

Upon examination, Liu observed that Plaintiff appeared to be in no acute distress, with a normal gait and stance, and was able to rise from her chair and get on and off the exam table without assistance.   Plaintiff was able to walk on her heels and toes "with moderate difficulty," and squat sixty percent of normal, both reportedly due to "low back pain." (Tr. 219).   Plaintiff's neurologic examination was normal, with full strength in upper and lower extremities. (Tr. 220).   Liu reported, however, that Plaintiff had some fine motor limitation in her left hand, with 4/5 grip strength and "mildly" decreased ability for fine manipulation. (Tr. 220).[4]   Liu found that function in Plaintiff's dominant right hand was normal. (Tr. 220).   Liu's medical source statement was as follows: "In my opinion, the claimant has mild to moderate limitation for prolonged walking, bending, kneeling, and overhead reaching.   The claimant has mild limitation for fine manipulation with left hand zip, button and tie." (Tr. 221).

On May 10, 2018, state-agency physician B. Stouter, M.D. ("Stouter") reviewed Plaintiff's disability claim and determined that Plaintiff was not disabled.   Stouter did not examine Plaintiff, but, rather, based her opinion on a review of Plaintiff's Adult Function Report and Dr. Liu's report. (Tr. 60-61).[5]   Stouter indicated that Plaintiff's impairments consisted of arthritis resulting in pain, and obesity. (Tr. 62).   Stouter noted that Plaintiff

---

[4] Liu noted that Plaintiff's left hand "locked" during the exam, causing three of her fingers to remain in a flexed position, but despite that, Plaintiff's grip strength was still 4/5 and her ability to perform fine manipulation with the left hand was only "mildly decreased." (Tr. 220).

[5] Stouter noted that four requests for records had been made to Plaintiff's treating physician, apparently without a response. (Tr. 61).

also had hypertension and diabetes, but with "no secondary issues noted" from those conditions. (Tr. 63).   Stouter opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and sit/stand and/or walk each for six hours in an eight-hour workday. (Tr. 63).   Stouter further stated that Plaintiff had various postural limitations, as well as limited ability to "finger" objects with the left hand. (Tr. 64).   In sum, Stouter indicated that Plaintiff was not disabled since she was capable of performing less than a full range of light work. (Tr. 66).

On September 27, 2019, after Plaintiff's claim was denied initially, an Administrative Law Judge ("ALJ") conducted a hearing, at which Plaintiff appeared with an attorney.   The ALJ took testimony from Plaintiff and a vocational expert ("VE"). (Transcript ("Tr.") at 33-58.   Plaintiff's description of her condition differed from what was described either in her Adult Function Report or Dr. Liu's examination report.   For example, Plaintiff indicated that, in addition to the already-mentioned conditions, she now had ganglion cysts in her right hand and right foot, although, the record indicates that the cyst in her foot resolved on its own. (Tr. 317).   Plaintiff also indicated that she had symptoms related to her diabetes, namely "fainting spells," periods of "feeling jittery," and "spasms" in her hands, legs and back. (Tr. 46).   Plaintiff also claimed to have arthritis symptoms in both hands, causing them to "freeze up." (Tr. 48).   Plaintiff stated that she could sit for up to two hours at a time and walk for up to fifteen minutes. (Tr. 49).   Plaintiff further testified that she was essentially unable to perform any household tasks, including preparing meals, washing dishes or doing laundry. (Tr. 50).

8

On January 29, 2020, the ALJ issued a decision finding that Plaintiff was not disabled at any time between the SSI application date and the date of the decision. Tr. 10-20.   The ALJ applied the five-step sequential evaluation and found, in pertinent part, that Plaintiff had severe impairments consisting of diabetes, diabetic neuropathy, anemia, arthritis, carpal tunnel syndrome of the left wrist, ganglion cyst and tenosynovitis of the right hand (inflammation of the synovial membrane/tendon sheath),[6] and obesity. (Tr. 12).[7]   The ALJ further found that Plaintiff had the RFC to perform work at the light exertional level,[8] "except all postural are limited to occasional.   Overhead reaching bilaterally is limited to occasional and fingering bilaterally is limited to occasional." (Tr. 14).   In that regard, the ALJ adopted an RFC that was more restrictive, that is, more favorable to Plaintiff, than what had been indicated by either Dr. Liu or Dr. Stouter.   Next, the ALJ found that with such RFC, Plaintiff could perform her past relevant work as a retail sales assistant manager. (Tr. 18).   The ALJ further proceeded to find, at step five

---

[6] "De Quervain tenosynovitis (dih-kwer-VAIN ten-oh-sine-oh-VIE-tis) is a painful condition affecting the tendons on the thumb side of the wrist. If you have de Quervain tenosynovitis, you will probably feel pain when you turn your wrist, grasp anything or make a fist." https://www.mayoclinic.org/diseases-conditions/de-quervain-tenosynovitis/symptoms-causes/syc-20371332

[7] The ALJ noted that Plaintiff had also been diagnosed with chronic kidney disease, likely secondary to hypertension and/or diabetes, as well as fatty liver, but that those conditions were asymptomatic. (Tr. 13).

[8] A full range of "light work" generally involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Giddings v. Astrue*, 333 F. App'x 649, 651 (2d Cir. 2009) (quoting 20 C.F.R. § 404.1567(b)).   More specifically, a full range of light work generally involves standing and/or walking for up to six hours during an eight-hour workday. *See, Gray v. Kijakazi*, No. 20 CIV. 4636 (SLC), 2022 WL 974385, at *12 (S.D.N.Y. Mar. 31, 2022) ("SSR 83-10 expands on the walking and standing requirements of light work, and provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.") (citing SSR 83-10, 1983 WL 31251, at *6). *See*, SSR 83-10 ("'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.").

of the sequential evaluation, that Plaintiff could also perform three other jobs that had been identified by the VE. (Tr. 20).   Consequently, the ALJ found that Plaintiff was not disabled.[9]

In discussing his RFC finding the ALJ first noted that he had considered all the evidence in accordance with the Commissioner's regulations, and, more specifically, that he had considered the medical opinion evidence "in accordance with the requirements of 20 CFR [§] 416.920c." (Tr. 14).   The ALJ reviewed the evidence and noted, for example, that Plaintiff claimed to have arthritis in her hands that caused them to lock and/or drop things, as well as "constant pain at an average level of 8/10," and that she further claimed to be unable to lift more than five pounds, walk more than fifteen minutes, or sit more than two hours. (Tr. 15).   However, the ALJ found that Plaintiff's self-reports of her limitations were greater than what could be supported by the record.   For example, with regard to the conditions allegedly affecting Plaintiff's hands (arthritis, carpal tunnel, ganglion cyst and tenosynovitis) the ALJ noted that objective testing showed only mild abnormalities and physical examinations "showed no significant findings," and, further, that treatment had been routine and conservative, consisting primarily of over-the-counter pain medications, aspirations of the ganglion cyst and one epidural injection. (Tr. 16).

The ALJ further found that Plaintiff's own statements about her alleged limitations were not credible insofar as they were inconsistent with other evidence concerning her daily activities.   The ALJ noted, for example, that at the hearing Plaintiff claimed she lived

---

[9] Plaintiff appealed, but the Appeals Council declined to review the ALJ's decision, making the ALJ's ruling the Commissioner's final decision.

a very "limited lifestyle" and that her adult son essentially did most things for her and her family that required any type of exertion, such as cleaning and cooking. (Tr. 17, 50).    The ALJ found, however, that such testimony was inconsistent with Plaintiff's prior reports about her activities, in which she admitted to "perform[ing] a variety of activities" including some cleaning and cooking. (Tr. 17). The ALJ also noted that Plaintiff's medical records showed that in March, 2019, Plaintiff, who had previously worked as a personal care aid, injured her foot while changing her mother's oxygen tank. (Tr. 272-277) ("Was changing mother's O2 tank and it fell off table onto top/side of right foot.").

Regarding the medical opinion evidence, the ALJ stated that he found Liu's opinion, that Plaintiff had only mild limitations, unpersuasive insofar as it was "not set forth in vocationally relevant terms."    However, the ALJ stated that he had relied on Liu's reported findings in limiting Plaintiff to "light work with occasional postural and occasional overhead reaching and fingering bilaterally." (Tr. 18).    As for Stouter's opinion, the ALJ found that it was "vague in part" insofar as it did not define Plaintiff's "manipulative limitations in vocationally relevant terms." (Tr. 18).    However, the ALJ found that Stouter's opinion was nevertheless "somewhat persuasive" and consistent with limiting Plaintiff to light work, with additional postural limitations and limitations on overhead reaching and fingering bilaterally.

Plaintiff subsequently commenced the instant action, alleging that the Commissioner's decision must be reversed since it is unsupported by substantial evidence.    As discussed more fully below, Plaintiff argues, first, that "the ALJ's residual functional capacity findings were unsupported, as the only opinions were that of the

consultative examiner, [Liu, whose opinion the ALJ] found unpersuasive, and the review physician[, Stouter,] whose opinion was formed solely on [Liu's] opinion." Pl. Memo of Law, ECF No. 10-1 at p. 8.   Additionally, Plaintiff contends that "the ALJ erred in rejecting the Plaintiff's subjective complaints." *Id*.

Defendant disputes Plaintiff's arguments and maintains that the ALJ's decision is free of reversible legal error and supported by substantial evidence.   Essentially, Defendant maintains that the ALJ properly exercised his discretion in reaching an RFC finding that was supported by the record as a whole, and that Plaintiff's objections amount to disagreements over how the ALJ weighed the evidence.

The Court has carefully reviewed and considered the parties' submissions.

## DISCUSSION

Plaintiff contends that the ALJ's RFC finding was erroneous since, it was unsupported by substantial evidence.   In that regard, Plaintiff first focuses on the opinions of Liu and Stouter, and contends that neither one amounts to substantial evidence.   More specifically, Plaintiff argues that Liu's opinion is not substantial evidence, since the ALJ purportedly "found it unpersuasive," and that Stouter's opinion, in addition to being vague, is not substantial evidence, since it was based on Liu's opinion, and did not result from a personal examination of Plaintiff.   Plaintiff asserts that since neither medical opinion amounts to substantial evidence, the ALJ necessarily and impermissibly "substitute[d] his own medical judgment for that of an expert." ECF No. 10-1 at p. 9.

Plaintiff alternatively argues that the ALJ should not have relied on Liu's opinion since Liu "lacked any imaging of the Plaintiff." *Id*. at 10.   On this point, Plaintiff further asserts that, "[a]n ALJ cannot rely upon a consultative exam granted [sic] when there is imaging evidence which the consultative examiner did not see." *Id*.   Additionally, Plaintiff asserts that neither Liu nor Stouter reviewed Plaintiff's diagnostic imaging results, and that the ALJ was not qualified to draw any conclusions from such results, requiring him to obtain an additional expert opinion. *Id*. at 12.   Relatedly, Plaintiff maintains that the opinions from Liu and Stouter were "stale," since she "had additional severe impairments which Dr. Liu and Dr. Stouter did not acknowledge, or were not aware of, including carpal tunnel syndrome, ganglion cyst and tenosynovitis of the right hand." *Id*. at p. 11.

Finally, Plaintiff contends that the ALJ erred, when making his RFC finding, by "rejecting" Plaintiff's subjective complaints. *Id*. at p. 8.   On this point, Plaintiff maintains that the ALJ's analysis of her credibility was too "conclusory" to permit the Court to conduct a meaningful review. *Id*. at 13.   Plaintiff further asserts that the factors upon which the ALJ relied, such as her conservative treatment and daily activities, are not substantial evidence that she can work full time at the light exertional level on a regular and continuing basis. *Id*. at 15-16.

The general principles concerning the ALJ's function in making an RFC finding are well settled, including the principle that an ALJ's RFC finding need not perfectly correspond to any particular medical opinion, but instead should be consistent with based all of the credible relevant evidence:

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996) (emphasis added). Therefore, the ALJ's RFC determination need not perfectly correspond with any one of the opinions of the medical sources cited in his or her decision, so long as he or she has "weigh[ed] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

*Violet-Maria R. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0999 (CJS), 2021 WL 1169186, at *4 (W.D.N.Y. Mar. 29, 2021); *see also*, *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (Rejecting argument that ALJ had improperly substituted his medical judgment for expert opinion, stating that: "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Camille v. Colvin*, 652 F. App'x 25, 29 n. 5 (2d Cir. 2016) ("The ALJ used Dr. Kamin's opinion as the basis for the RFC but incorporated additional limitations based on, *inter alia*, the testimony of Camille that she credited. An ALJ may accept parts of a doctor's opinion and reject others.") (citations omitted).

An ALJ, though, cannot arbitrarily substitute his own lay opinion for competent medical opinion evidence. *See, e.g., Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) ("[T]he ALJ cannot arbitrarily substitute h[er] own judgment for competent medical opinion." *McBrayer v. Secretary of Health and Human Servs*., 712 F.2d 795, 799 (2d Cir. 1983).")). However, as just mentioned, an ALJ is entitled to make an RFC finding that is consistent with the record as a whole, even if it does not perfectly match a particular

medical opinion. *See, Matta v. Astrue*, 508 F. App'x at 56 (Rejecting argument that ALJ had improperly substituted his medical judgment for expert opinion, stating that: "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also, Camille v. Colvin*, 652 F. App'x 25, 29 n. 5 (2d Cir. 2016) ("The ALJ used Dr. Kamin's opinion as the basis for the RFC but incorporated additional limitations based on, *inter alia*, the testimony of Camille that she credited. An ALJ may accept parts of a doctor's opinion and reject others.") (citations omitted).

Reversal may also be appropriate where the Commissioner's decision to deny benefits rests on a consultative opinion that was "stale" because it was rendered on an incomplete record, particularly where subsequent developments in the medical evidence cast doubt on the accuracy of the opinion:

> In *Hidalgo v. Bowen*, under the regulations then in effect, the Second Circuit rejected an ALJ's decision that relied exclusively on the opinion of a non-examining consultant, in part because the non-examining physician reviewed a limited record that did not include subsequent clinical findings, such as clinical notes of a treating physician and hospital records including X-rays. 822 F.2d 294, 295–96, 298 (2d Cir. 1987). Because this subsequent evidence "confirmed" the RFC determination of the primary treating physician and "may have altered [the non-examining consultant's] conclusions," the Second Circuit remanded to the ALJ. *Id.* at 298. But in *Camille v. Colvin*, the Second Circuit reached the opposite conclusion in a non-precedential opinion, rejecting an argument that a non-examining source was "stale" solely because a non-examining source did not review later submitted evidence where "th[at] additional evidence does not raise doubts as to the reliability of [the non-examining source's] opinion." 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (distinguishing *Hidalgo*, 822 F.2d at 295–96,

298).  In that case, because the later opinion evidence did not differ materially from the opinions that the non-examining physician did consider, the Second Circuit found that the ALJ committed no error by relying on the non-examining physician. *Id*.

*West v. Berryhill*, No. 3:17-CV-1997 (MPS), 2019 WL 211138, at *5 (D. Conn. Jan. 16, 2019) (footnote omitted).   Moreover,

> "[t]he mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Whitehurst v. Berryhill*, 1:16-CV-01005, 2018 U.S. Dist. LEXIS 137417, 2018 WL 3868721 (W.D.N.Y. Aug. 14, 2018). *See also Cruz v. Commissioner of Social Security*, 1:16-CV-00965, 2018 U.S. Dist. LEXIS 128514, 2018 WL 3628253 (W.D.N.Y. July 31, 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition[.]"). Thus, "[a] medical opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically before and after the opinion demonstrates substantially similar limitations and findings." *Pritchett v. Berryhill*, 1:16-CV-00965, 2018 U.S. Dist. LEXIS 103358, *23, 2018 WL 3045096 (W.D.N.Y. June 20, 2018) (internal citations and quotations omitted). *See also Camille v. Colvin*, 104 F. Supp. 3d 343-44 (WDNY 2015) (An opinion is not stale if it is significantly mirrored by records formed at a later date.).

*Sarah H. o/b/o A.H. v Saul,* No. 6:20-CV-6209-MJR, 2021 WL 2451528, at *3 (W.D.N.Y. June 16, 2021).   With regard to an ALJ's alleged reliance on "stale" evidence, "[o]verall, remand is warranted where more recent evidence in the record 'directly contradict[s] the older reports of [claimant's] functioning on which the ALJ relied' and the ALJ failed to analyze the more recent evidence." *Cassandra B. o/b/o A.L.T. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1194 (WBC), 2021 WL 780300, at *3 (W.D.N.Y. Mar. 1, 2021) (quoting *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, (2d Cir. 2020)).

16

Applying the foregoing factors to the subject case, the Court finds that Plaintiff's arguments lack merit.   To begin with, the Court disagrees with Plaintiff's contention that the ALJ erred by relying on the opinions of Doctors Liu and Stouter when making the RFC finding.   Liu examined Plaintiff and reported essentially normal findings, except for some limited range of movement related to alleged low-back pain and some mildly limited ability to perform fine manipulation with the left hand. (Tr. 219-220).   Insofar as the ALJ found Liu's report unpersuasive, it was because he did not express his opinion in "vocationally relevant terms," meaning that Liu used terms like "mild to moderate limitation" and "mild limitation," rather than indicating that Plaintiff could perform work at a particular exertional level.   However, the ALJ did not question the accuracy of Liu's findings, which, as the ALJ noted, were benign and largely consistent with the rest of the evidence. The ALJ was entitled to rely on those findings. *See, e.g., Foley v. Comm'r of Soc. Sec.*, No. 1:18-CV-00512 EAW, 2019 WL 4386046, at *7-8 (W.D.N.Y. Sept. 13, 2019) ("In the instant matter, the ALJ gave 'some weight' to the opinions of consultative examiners Dr. Luna and Dr. Balderman, and to the opinion of the state agency medical consultants.   The ALJ found Dr. Luna's opinion from the psychological consultative exam was somewhat consistent with the objective medical evidence.   Additionally, the ALJ found the opinion of internal medicine consultative examiner Dr. Balderman was somewhat consistent with the medical evidence. *The ALJ relied on Dr. Balderman's physical assessment that Plaintiff had full range of motion and full strength and dexterity, but stated his opinion would only be given "some weight" because the "opinion was vague, and did not list the claimant's physical limitations in vocationally relevant terms.*" . . . The ALJ's decision regarding

17

Plaintiff's limitations is supported by substantial evidence. In the instant matter, the ALJ used the factual findings from the opinions of Dr. Balderman, Dr. Luna, and the state agency medical consultants in making his RFC determination. The ALJ also used the other medical evidence of record to make his finding, including Plaintiff's treatment records, none of which contradicted his RFC determination.") (emphasis added; footnotes and citations to record omitted).

Nor was it error for the ALJ to rely on Stouter's opinion simply because Stouter did not personally examine Plaintiff, or because Stouter relied in part on Liu's findings. *See, e.g., Christopher U. v. Saul*, No. 19-CV-1324F, 2021 WL 1062618, at *6 (W.D.N.Y. Mar. 18, 2021) ("Significantly, the consultative opinions and opinions of state agency review physicians may constitute substantial evidence so long as they are consistent with other evidence in the record. *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (consultative physician's report may constitute substantial evidence). Further, the report of a consultative psychologist also may constitute substantial evidence, *Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011), as may the opinions of state agency consultants because they are highly qualified experts in Social Security disability evaluations. 20 C.F.R. §§ 404.1513a(b)(1), 404.1527(c) and (e). Based on these same criteria, the opinions of such non-examining sources can constitute substantial evidence in support of an ALJ's decision. *Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995).").

Indeed, the opinions of Liu and Stouter are consistent with much of the other medical evidence.  More specifically, several subsequent examinations performed by Plaintiff's own treating sources were completely unremarkable, and none found more than

mild limitations.   For example, on June 10, 2018, Plaintiff went to the emergency room complaining of severe, maximum pain in her right arm (Tr. 246) ("Reports pain in right arm.   Pain is 10 out of 10 on a pain scale."), but treatment providers reported that she appeared to be in no apparent distress, after which they gave her ibuprofen and discharged her. (Tr. 246).   On September 24, 2018, Plaintiff was examined at Roswell Park Oncology, at which time she reported "no pain, no myalgia, no back pain, no joint swelling, [and] no limited range of motion," and the treatment provider reported completely normal physical and neurological examination findings. (Tr. 348) ("Normal gait and station.   Range of motion normal.   Strength and tone normal . . . . No motor defects."). On October 17, 2018, at an office visit, Plaintiff denied any medical concerns, and a physical examination was again normal. (Tr. 308) ("Denies any concerns at this time, reports feeling well overall. . . .   Denies joint pain and myalgia.").   And, finally, on March 25, 2019, Plaintiff's treating physician, Adnan Sheriff, M.D., completed a report indicating that Plaintiff was "within normal limits" ("WNL") in all areas, including "musculoskeletal" and "neurological," except for some "subcutaneous abscesses" in her abdomen. (Tr. 337).[10]   It was therefore accurate for the ALJ to observe that "physical examination [of Plaintiff] showed no significant findings." (Tr. 16).

Plaintiff's remaining arguments concerning the opinions of Liu and Stouter similarly lack merit.   For example, the opinions were not "stale" either because of the passage of time or the lack of diagnostic testing, since, as noted earlier, "a medical opinion based on

---

[10]  Left unexplained is the fact that Sheriff's report appears to have been issued to clear Plaintiff for employment in a health care setting. (Tr. 337).

only part of the administrative record may still be given weight if the medical evidence falling chronologically before and after the opinion demonstrates substantially similar limitations and findings," which is the case here, regardless of any new diagnostic terms that may have appeared in Plaintiff's chart to describe the problems she claimed to be having with her hands. *Sarah H. o/b/o A.H. v Saul,* No. 6:20-CV-6209-MJR, 2021 WL 2451528, at *3.   As just discussed, examinations performed long after Liu and Stouter wrote their reports showed little if any limitations in Plaintiff's ability to function.   In any event, the ALJ went further than what Liu and Stouter had recommended, by including additional limitations on Plaintiff's ability to use her hands in the RFC finding.

Nor was it improper for the ALJ to rely on the opinions simply because Liu and Stouter issued them without having seen Plaintiff's imaging results. *See, Frank T. v. Comm'r of Soc. Sec.*, No. 1:20-CV-500 (WBC), 2021 WL 3635212, at *4 (W.D.N.Y. Aug. 17, 2021) ("Plaintiff further argues that the opinions of the consultative examiners cannot constitute substantial evidence because they did not review a complete record and did not review a treating opinion.   Plaintiff's argument fails.   A consultative examiner is not required to obtain or review laboratory reports or treatment records. Therefore, the fact that Drs. Liu and Koenig did not review medical imaging, or a treating opinion, does not preclude the ALJ from affording their opinions weight nor does it preclude the ALJ from relying on their opinions in formulating the RFC.") (citations omitted).

Plaintiff further contends that the ALJ erred in citing the results of diagnostic testing in support of his RFC finding, since he is a layman who is not qualified to interpret diagnostic results.   However, the Court again disagrees, as the ALJ's discussion of the

20

diagnostic test results was limited to observing that there were no electromyogram or nerve conduction study tests to support Plaintiff's claims, and that the tests that were performed (x-rays) showed only mild abnormalities, as per the radiologists' reports. The ALJ did not err in relying, in part, on such evidence as support for his RFC finding:

> An ALJ may rely on mild or unremarkable diagnostic or clinical evidence to support a finding of not disabled when it is consistent with other evidence in the record. *See Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (affirming a finding of not disabled where the ALJ relied upon an MRI showing only mild or unremarkable findings along with medical records from examining and non-examining physicians consistent with those findings). Moreover, "[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say.").

*Ashley S. v. Comm'r of Soc. Sec.*, No. 19-CV-1033, 2021 WL 763725, at *8 (W.D.N.Y. Feb. 26, 2021).

Plaintiff further contends that the ALJ should not have considered her pursuit of only conservative treatment when evaluating the credibility of her subjective complaints. However, the Court again disagrees. *See, e.g., Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) ("After extensively detailing the medical evidence and Penfield's testimony, the ALJ afforded her statements only 'partial credibility' because 'they were inconsistent with the objective evidence in the record.' Our independent review of the administrative record supports the ALJ's credibility determination. For example, while Penfield testified that her constant pain prevented her from standing for more than five

minutes without leaning against something or dressing herself without assistance, her treating physician consistently prescribed a 'conservative treatment' regimen that consisted of 'walking[,] home exercise program[s],' and 'gentle stretching.'"); *see also, Rayshown M. v. Comm'r of Soc. Sec.*, No. 6:20-CV-07001 EAW, 2022 WL 4298263, at *5 (W.D.N.Y. Sept. 19, 2022) ("A plaintiff's receipt of conservative treatment is an appropriate consideration by the ALJ.").

Additionally, it was not error for the ALJ to consider Plaintiff's daily activities, along with the other evidence of record, when determining that her subjective complaints were not entirely credible:

> "When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted). Here, Yucekus testified that, with medication, the pain was manageable and that he did not regularly take his pain medication. *See Dumas*, 712 F.2d at 1553 (stating that "a remediable impairment is not disabling"). Additionally, Yucekus testified that he can perform basic daily tasks, such as dressing himself and grocery shopping. *See Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980) (claimant's ability to perform daily activities like cooking and shopping supported ALJ's determination that she could perform sedentary work despite pain).

*Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 556 (2d Cir. 2020).   To the extent Plaintiff contends that there was not substantial evidence overall to support the ALJ's credibility finding, or his finding that she was capable of working full-time on a regular and continuing basis, the Court disagrees.

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No.10) for judgment on the pleadings is denied, and Defendant's cross-motion (ECF No. 11) for the same relief is granted.   The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
         September 28, 2022

                                        ENTER:

                                        CHARLES J. SIRAGUSA
                                        United States District Judge